UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EXXON MOBIL CORPORATION          *          CIVIL ACTION

VERSUS                           *          NO: 09-6732

UNITED STATES DEPARTMENT OF      *          SECTION: "D"(2)
INTERIOR

## ORDER AND REASONS

Before the court is the **Motion for Summary Judgment** filed by

Plaintiff, Exxon Mobil Corporation.  Defendant, The United States

Department of the Interior (DOI), filed a memorandum in opposition.

The motion, set for hearing on Wednesday, June 16, 2010, is before

the court on briefs, without oral argument.  Now, having considered

the memoranda of counsel, the record, and the applicable law, the

court rules.

## I.  Background

Exxon Mobil is the Operator of the Walker Ridge Block 627

Unit, which is comprised of five offshore federal leases located in

remote deepwater areas of the Gulf of Mexico.  (Exxon Mobil's

Uncontested Material Fact No. 1).  On May 29, 2008, the Mineral

Management Service (MMS), a sub-agency of the DOI, approved the

formation of the Walker Ridge Block 627 Unit, based on the discovery by Exxon Mobil (and its co-venturers) of a reservoir (the "Julia Discovery") believed to hold significant oil reserves. (Exxon Mobil's Uncontested Material Fact No. 1). On October 21, 2008, Exxon Mobil requested MMS to grant a suspension of production (SOP) for the Walker Ridge Block 627 Unit pursuant to 30 C.F.R. § 250. (Exxon Mobil's Uncontested Material Fact No. 3; Exxon Mobil's Memo., Doc. No. 14-3, p. 7 of 25, fn. 3, *citing* A.R. Tab 14, at pp. 000203-000206; Complaint at ¶8; Answer at ¶8).[1]

MMS denied Exxon Mobil's request for an SOP in a pair of decisions dated February 10, 2009 and April 9, 2009 (the MMS SOP Decisions). (Exxon Mobil's Uncontested Material Fact No. 4). Exxon Mobil appealed the MMS SOP Decisions to the Interior Board of Land Appeals (IBLA), and that appeal is currently pending under Docket No. IBLA-2009-190-OCS.[2] (Exxon Mobil's Uncontested Material Fact No. 5).

Pursuant to the Freedom of Information Act, 5 U.S.C. §552 (FOIA), Exxon Mobil made three requests for records for use in its appeal of the MMS SOP Decisions. (Exxon Mobil's Uncontested Material Fact No. 6, referencing FOIA Request No. 2009-00080 of

---

[1] *See* fn. 2, *infra.*

[2] The Administrative Record in IBLA-2009-190-OCS has been filed under seal in this court's record as Doc. No. 31.

February 25, 2009, FOIA Request No. 2009-00128 of April 28, 2009
and FOIA Request No. 2009-00135 of May 7, 2009). MMS responded to
these requests, but Exxon Mobil deemed MMS's responses to be
deficient, and Exxon Mobil filed a series of three administrative
appeals. The DOI never issued a decision on any of these appeals,
and Exxon Mobil ultimately filed this suit.

In the instant Motion for Summary Judgment, Exxon Mobil argues
that: (1) MMS failed to produce documents responsive to Exxon
Mobil's FOIA requests; and (2) MMS withheld an apparently large
volume of documents claiming the documents were proprietary and
confidential and thus exempt from disclosure under 5 U.S.C.
§552(b)(4). Accordingly, Exxon Mobil now requests this court to
order the DOI to produce all responsive documents to Exxon Mobil,
and to provide a non-categorical *Vaughn* index of all documents
withheld (or alternatively require MMS to submit documents for an
*in camera* review pursuant to 5 U.S.C. §552(a)(4)(B)).

The following summarizes Exxon Mobil's FOIA requests, MMS's
responses thereto, and Exxon Mobil's summary judgment arguments as
to why MMS' responses are deficient:

    (1)    In its **FOIA Request dated February 25, 2009**, Exxon Mobil
requested copies of documents reflecting (*inter alia*) the
granting and denial of SOPs for Gulf of Mexico leases
since January 1, 1994, including documents reflecting the

"schedule of work" that pertains to the relevant SOPs.[3] (*See* Exxon Mobil's Ex. 1, FOIA Request dated Feb. 25, 2009).

**MMS's Response:** In a letter dated April 24, 2009, MMS provided a listing of the thousands of leases and units for which SOPs had been granted and denied during the relevant time period. MMS did not provide Exxon Mobil with copies of the actual SOP documents, but directed Exxon Mobil to a MMS website from which copies of the relevant letters purportedly could be obtained.

MMS further stated that:

> It has been determined that some of the information you requested is exempt from release under the provisions of the FOIA (5 U.S.C., Section 552(b)(4)) which concerns the release of "trade secrets and commercial or financial information obtained from a person that is privileged or confidential." It is our policy to employ Exemption 4 by withholding confidential commercial information that could jeopardize a company's financial standing and/or competitive position. Sound grounds exist for invoking this exemption. We are unable to provide the "operator" request and the MMS approved activity schedule since these items are held as proprietary. The operator request usually contains information such as reserve estimates and structure maps as well as an activity schedule which includes "trade secrets". Even

---

[3] MMS regulations mandate that a lessee requesting a suspension submit "[a] reasonable schedule of work leading to the commencement or restoration of the suspended activity." 30 C.F.R. §250.171(b).

> though the lease commences production, we feel
> that the public can learn information that
> should remain proprietary because it provides
> the path, planning, and thinking that an
> operator uses as they step through the
> development. For this reason we will withhold
> the information under Exemption 4.

(Exxon Mobil Ex. 4, MMS's letter dated April 24, 2009).

In a supplemental letter dated August 18, 2009, MMS asserted that it "inadvertently omitted the volume of documents that were withheld under Exemption 4." (Exxon Mobil Ex. 8, MMS's letter dated August 18, 2009). MMS further explained:

> There are approximately 27,000 hard copy
> documents that were subject of your request,
> with those publicly releasable available at
> our [updated] website...The official file
> copies of the 27,000 documents which would
> have to be redacted for the non-releasable
> information are intermingled among 1,600,000
> hard copy unredacted, unindexed other
> documents that have limited accessibility due
> to being housed in space saver equipment. It
> would be necessary to access and review page
> by page 1,600,000 documents to find the 27,000
> documents that contain the activity schedules
> of the various companies which were withheld
> under Exemption 4 as containing trade secrets
> as to their operations. Given the enormous
> volume of documents, our office went to the
> time and expense to convert the hard copy of
> the publicly releasable documents to scanned
> images to place on our website for easy access
> by our requestors.

> We have provided you, as well as the general
> public, full access to the public copy of the
> Suspension of Production [SOP] and Suspension

of Operations [SOO] documents on our website
as scanned images. The 27,000 official record
copies of these documents, which contain the
company activity reports, have not been
scanned and converted into electronic images,
nor have the other 1,600,000 documents in
which they are intermingled. We have done the
best we can to provide the public with the
releasable information in a format that can be
easily used. A project of sorting through
1,600,000 hard copy documents is well beyond
our means to accomplish, but if narrowing the
scope of your request would be of benefit to
you, we would be glad to assist in doing
whatever we can to help.

(*Id.*).

Exxon Mobil now **argues** that the MMS website does not

contain copies of all the letters listed on the MMS

schedules, and letters approving SOPs for more than

seventy leases appear to be missing. (Exxon Mobil Memo.,

Doc. No. 14-3 at p. 12 of 25). Exxon Mobil also submits

that "[a]lso missing from MMS's website are five letters

that apparently reflect MMS's denial of requests for

SOPs'." (*Id.*). Exxon Mobil also claims that it is

entitled to a *Vaughn* Index identifying the withheld

documents and the exemptions claimed.

(2) In its **FOIA Request of April 28, 2009**, Exxon Mobil

requested all documents relating to the two MMS SOP

Decisions (the "Karl Letter" and the "Herbst Letter", as

well as all documents relating to the Julia Prospect and

6

the Walker Ridge Block 627 Unit.  (*See* Exxon Mobil's Ex.

2, FOIA Request dated April 28, 2009).

**MMS's Response:** In a letter dated May 14, 2009, MMS

stated:

> Due to the extensive scope of [Exxon
> Mobil's] requests, in light of out
> limited staff and high number of
> FOIA requests we are currently
> processing, we are seeking review by
> our Solicitor's Office.  We will
> advise you of the status as soon as
> possible.

(Exxon Mobil's Ex. 5, MMS's letter dated May 14,
2009).

In a supplemental letter dated June 26, 2009, MMS

responded to Exxon Mobil's request for documents relating

to the Walker Ridge Block Unit 627 Unit by referring

Exxon Mobil to a website containing a copy of certain

unitization documents.  Regarding Exxon Mobil's other

requests contained in the **April 2009 FOIA Request**, MMS

asserted that "[all information ... can be found in the

Administrative Record" (in IBLA-2009-190-OCS).  (Exxon

Mobil's Ex. 6, MMS's letter dated June 26, 2009).

Exxon Mobil now **argues** that the Administrative

Record is not responsive to its requests for "all

documents that relate to" the MMS SOP Decisions and for

"all documents relating to the Julia Prospect."  Exxon

Mobil further submits that MMS's response to Exxon

Mobil's request for "all documents relating to the Walker

Ridge Block 627 Unit" is inadequate because none of the

"internal e-mail, memoranda, workpapers, notes and other

materials that pertain to the Walker Ridge Block 627

Unit" are contained within the public sources to which

MMS referred in its response. (Exxon Mobil Memo., Doc.

No. 14-3, at page 18 of 25).

(3)  In its **FOIA Request of May 7, 2009**, Exxon Mobil set forth

the following eleven requests of documents:

Request No. 1:

All documents relating to MMS interpretations, policies,
practices, procedures or methodologies pertaining to the
standard articulated by MMS in the following on page 2 of
the attached letter dated February 10, 2009: "however,
Minerals Management Service (MMS) concludes that your
purported commitment is not based on activities within
your control."

Request No. 2:

All documents relating to MMS interpretations, policies,
practices, procedures or methodologies pertaining to the
application of 30 C.F.R. §250.171.

Request No. 3:

All documents relating to MMS interpretations, policies,
practices, procedures or methodologies pertaining to the
application of 30 C.F.R. §250.174.

Request No. 4:

All documents relating to the workshop identified in 72

Federal Register 63155 (Nov. 8, 2007).

Request No. 5:

All documents relating to the subject matter of the workshop identified in 72 Federal Register 63155 (Nov. 8, 2007).

Request No. 6:

All documents relating to MMS interpretations, policies, practices, procedures or methodologies pertaining to suspensions for leases which have discovered a Lower Tertiary (Paleogene) reservoir.

Request No. 7:

All documents relating to MMS interpretations, policies, practices, procedures or methodologies pertaining to suspensions for leases located in deep water areas of the Gulf of Mexico.

Request No. 8:

All documents relating to MMS interpretations, policies, practices, procedures or methodologies pertaining to suspensions for leases granted pursuant to Section 304 of the RRA.

Request No. 9:

All documents relating to the anticipated expiration of leases granted pursuant to Section 304 of the RRA.

Request No. 10

All documents relating to communications between MMS personnel and Congress (including any congressional committee or individual affiliated with such a committee) concerning leases granted pursuant to Section 304 of the RRA.

Request No. 11

All documents relating to suspensions for [67] specified

leases.

(*See* Exxon Mobil's Ex. 3, FOIA Request dated May 7, 2009).

**MMS's Response:** In its response to this FOIA Request, MMS referred Exxon Mobil to the Administrative Record for Request Nos. 1, 2, 3, 6 and 7, and to various websites for Request Nos. 4, 5,9, and 11. In response to Request No. 8 (for "All documents relating to MMS interpretations, policies, practices, procedures or methodologies pertaining to suspensions for leases granted pursuant to Section 304 of the RRA"), MMS responded that it was "not aware of any documents that exist pertaining specifically to this topic." (Exxon Mobil Ex. 7, MMS's letter dated July 24, 2009). And in response to Request No. 10 (for "All documents relating to communications between MMS personnel and Congress (including any congressional committee or individual affiliated with such a committee) concerning leases granted pursuant to Section 304 of the RRA"), MMS for the Gulf of Mexico OCS Region responded that "[t]hese documents are not maintained at our office" but are located at the MMS Office of Congressional Affairs. *Id*.

Exxon Mobil now **argues** that in response to Request Nos. 1, 2, 3, 7 and 7, MMS's referral to the

Administrative Record is deficient because Exxon Mobil is seeking "a universe of documents that is broader than those contained within the Administrative Record in ExxonMobil's appeal of the MMS SOP Decisions." (Exxon Mobil Memo., Doc. No. 14-3, at page 21 of 25).

Exxon Mobil further **argues** that MMS' responses to Request Nos. 4, 5, 9, and 11 wherein MMS refers Exxon Mobil to certain websites, is deficient. Further, Exxon Mobil argues that MMS's response to Request No. 8, wherein MMS states that it is unaware of any documents that exist specifically to this topic," is deficient because MMS does not describe the effort it made to search for such topics. Regarding MMS's response to Request No. 10, wherein MMS states that the documents were not housed in the MMS Gulf of Mexico Region's office, Exxon Mobil **argues** that it addressed its May 7 FOIA Request to the MMS FOIA office in Herndon, Virginia, and not only to MMS's Gulf of Mexico Region.

In opposition to Exxon Mobil's Motion for Summary Judgment, the DOI asserts that MMS has properly responded to all of Exxon Mobil's FOIA requests. The DOI attached to its opposition memorandum the Sworn Declaration of Robert Zainey, Chief of the Public Information Resources Section and the Freedom of Information

Act Officer with the Gulf of Mexico Outer Continental Shelf Region for MMS, to describe the method in which each of the subject FOIA requests were processed by MMS. (*See* Zainey Declaration, Doc. No. 29-1). The DOI contends that because Exxon Mobil's FOIA requests are so voluminous and a categorical description can be made on the documents and withholding, Mr. Zainey's Declaration is an appropriate *Vaughn* Index.

Exxon Mobil, however, argues that because MMS has withheld documents based on confidentiality and/or privilege, MMS must produce a *Vaughn* Index that describes the withheld material with reasonable specificity and explains why the records fall within the claimed FOIA exemption. Exxon Mobil submits that:

> Not only does [the Zainey Declaration] fail to identify the withheld documents under a fact-specific approach, it lacks even a categorical description of the withholdings. Instead of providing any explanation as to how the claimed exemption applies to the withheld documents, the Declaration merely states that a *Vaughn* index would be unreasonably time-consuming.

(Exxon Mobil's Reply, Doc. No. 34 at p. 6, citing Zainey Dec. at p. 6).

Exxon Mobil also argues that the Zainey Declaration is based almost entirely on inadmissible hearsay, and not on Mr. Zainey's personal knowledge, as the subject FOIA requests were processed by personnel other than Mr. Zainey. (*Id*. at pp. 8-9, listing Exxon

Mobil's examples of hearsay). Further, Exxon Mobil submits that the Declaration contains inadmissible legal arguments and conclusions as well as inadmissible opinions under Federal Rule of Evidence 701. (*Id.* at pp. 9-10, listing Exxon Mobil's examples of Conclusions of Law and Inadmissible Opinions). Based on the action taken below, the court need not address this portion of Exxon Mobil's summary judgment argument.

## II. Legal Analysis

The court finds that Exxon Mobil has exhausted the available administrative remedies under FOIA and thus entitled to seek relief in federal court. However, to the extent that Exxon Mobil seeks documents which are located outside the Eastern District of Louisiana (eg. documents maintained at the MMS Office of Congressional Affairs), the court lacks subject matter jurisdiction. 5 U.S.C. §552(4)(B)("the district court of the United States in the **district** in which the complainant resides, or has his principal place of business, or **in which the agency records are situated**, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant")(emphasis added).

## First FOIA Request of February 25, 2009

The court next addresses Exxon Mobil's summary judgment claim that it is entitled to a *Vaughn* Index as to those documents the DOI claimed were exempt from disclosure under 5 U.S.C. §552(b)(4). In general, summary judgment is appropriate when there is no genuine issue of material fact and the moving party (here, Exxon Mobil) is entitled to judgment as a matter of law. In the FOIA context, however, the traditional standard is modified because "the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010)(citation omitted).

The FOIA statute provides that, when the Government withholds information from disclosure, the agency has the burden to prove de novo that the information is exempt from disclosure. *Id., citing* §552(a)(4)(B). Further, FOIA §522(b) states that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."

The exemptions to disclosure are explicitly limited by statute and should be construed narrowly. *Id.* In analyzing a declaration of the Government, the agency is entitled to a "presumption of legitimacy" unless there is evidence of bad faith in handling the

14

FOIA requests.  *Id.* at 176. (citation omitted).  The presumption of legitimacy, however, does nor relieve the withholding agency of its burden of proving that the factual information sought falls within the statutory exemption claimed.  *Id.*

Here, in response to Exxon Mobil's February 2009 FOIA Request, MMS provided Exxon Mobil with two lists of SOP's and SOO's approved and denied since January 1, 1994.  Further, MMS directed Exxon Mobil to MMS's website to obtain copies of approval letters, and MMS withheld disclosure of operator requests and MMS approved activity schedules under Exemption 4.[4] Per the Zainey Declaration, the Production Department also maintains copies of the same SOP approval/denial letters (that can be obtained on the website), but *with attachments* (that cannot be obtained from the website).  Per the Zainey Declaration, MMS purportedly sets forth a **categorical** withholding of these letter attachments (located in the Production and Development Office (PD) in this district), as well as a categorical withholding of the "operator" requests and "activity schedules," based on Exemption 4.  (*See* Zainey Declaration at pp. 7 & 11).

The Fifth Circuit recognizes that:

> in many instances an agency may submit an

---

[4]    Exemption 4 is a statutory exemption derived from 5 U.S.C. §552(b)(4), which states that "trade secrets and commercial or financial information from a person and privileged or confidential" are exempt from disclosure.

> affidavit or declaration **categorically**
> describing the types of documents and the
> applicable exemptions to justify its
> withholding. But where the agency affidavit
> fails to identify the particular type of the
> document being withheld-and the party seeking
> disclosure contests the type of information it
> contains-a district court may not simply rely
> on a broad categorical approach to
> withholding.

*Id.* at 178. (emphasis added, citation omitted).

In its motion, Exxon Mobil claims that the website it was directed to does not contain all of the letters listed on the MMS schedules. Exxon Mobil submits that "[l]etters approving SOPs for more than seventy leases and five letters that apparently reflect MMS's denial of requests for SOPs appear to be missing." (Exxon Mobil's Reply Memo., Doc. No. 34 at p.3). However, the identity of these seventy (+) leases (for which SOPs were approved) and five leases (for which SOPs were denied) is unclear. Thus, the court will instruct Exxon Mobil to identify these seventy (+) leases for which SOPs were approved and the five leases for which SOPs were denied, and then MMS will be instructed to provide them if they exist.

In its motion, Exxon Mobil does not specifically request disclosure of all of the withheld operator requests, MMS approved activity schedules and letter attachments (maintained by the Production Department in this district). Exxon Mobil also admits

that:

> [i]n its August 26, 2009 response (which Exxon
> Mobil filed into the record of FOIA Appeal No.
> 2009-103), Exxon Mobil agreed to reduce the
> scope of its request to only those "activity
> schedules" relevant to certain specific SOPs,
> which SOPs ExxonMobil attached to its
> response.    More than three months after
> ExxonMobil agreed to reduce the scope of its
> requests in an effort to satisfy MMS's
> objections, MMS never responded and the
> Interior never issued a decision in
> ExxonMobil's appeal.

(Exxon Mobil's Memo., Do. No. 14-3, at p. 13 of 25).

But Exxon Mobil does not provide the court with a copy of this August 26, 2009 letter in which it agreed to reduce the scope of its request to only those "activity schedules" relevant to certain specific SOPs. And, in its opposition, MMS does not address Exxon Mobil's purported agreement to reduce the scope of its request. Exxon Mobil nevertheless argues that MMS should be directed to produce a *Vaughn* Index that describes the withheld material with reasonable specificity and explains why the records fall withing FOIA Exemption 4. At this juncture, the court finds that ordering MMS to produce a *Vaughn* Index would be premature and too burdensome when Exxon Mobil can reduce the scope of its requests to certain specific SOPs. Thus, the court will instruct Exxon Mobil to reduce the scope of its request to only those "activity schedules" relevant to certain specific SOPs. Further, if Exxon Mobil seeks

operator requests and letter attachments (maintained by PD in this district), it should so specify. MMS will be instructed to respond to Exxon Mobil's more specific request, and if MMS withholds documents based on an exemption, it must provide Exxon Mobil (and the court) with a *Vaughn* Index, that must include a detailed index describing the contents of the documents withheld and a factual basis for the asserted exemptions. Exxon Mobil will then have an opportunity to challenge the *Vaughn* Index, if necessary.

## Third FOIA Request of May 7, 2009

In Part 11 of this request, Exxon Mobil requested documents relating to suspensions of specific leases. Exxon Mobil claims that MMS referred Exxon Mobil to a website that does not contain the responses to all of the requests. (Exxon Mobil Reply, Doc. No. 34 at pp. 4-5). The court will instruct Exxon Mobil to identify the specific leases for which information is missing from this website, and then MMS will be instructed to provide Exxon Mobil with documents relating to suspension of those leases, if they exist.

## Other Requests

Many of Exxon Mobil's requests seek "any and all documents," "any documents," or "all documents," and the court finds that such requests are impermissibly broad and do not comply with FOIA's requirement that the request for records "reasonably describe[]

such records." 5 U.S.C. §§552(a)(3)(A); *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996); *see also* DOI FOIA regulation, 43 CFR 2.8(a)(describing how requests must be with particularity).

### III. CONCLUSION

For the reasons set forth above;

**IT IS ORDERED** that Exxon Mobil's **Motion for Summary Judgment** be and is hereby **DENIED** for lack of subject matter jurisdiction, to the extent that Exxon Mobil seeks documents which are located outside the Eastern District of Louisiana;

**IT IS FURTHER ORDERED**, as to Exxon Mobil's **First FOIA Request of February 25, 2009,** Exxon Mobil's **Motion for Summary Judgment** is **DENIED** as premature. **IT IS FURTHER ORDERED** that by **Friday, July 9, 2010**, Exxon Mobil file into the record a List identifying the seventy (+) leases for which SOPs were approved and the five leases for which SOPs were denied, for which Exxon Mobil claims SOP approval/denial letters were missing from the subject MMS website. **IT IS FURTHER ORDERED** that by **Friday, July 30, 2010**, MMS provide Exxon Mobil with the corresponding SOP approval/denial letters for those leases identified by Exxon Mobil and file into the record documentation of same.

**IT IS FURTHER ORDERED**, as to Exxon Mobil's **First FOIA Request**

**of February 25, 2009,** that by **Friday, July 9, 2010**, Exxon Mobil file into the record its Request reducing its scope to only those "activity schedules" relevant to certain specific SOPs. Further, if Exxon Mobil seeks operator requests and letter attachments (maintained by PD), it should so specify in its Request. By **Friday, July 30, 2010,** MMS is instructed to respond to Exxon Mobil's more specific request, and if MMS withholds documents based on an exemption, it must provide Exxon Mobil (and file into the court's record) a *Vaughn* Index, that must include a detailed index describing the contents of the documents withheld and a factual basis for the asserted exemptions.

**IT IS FURTHER ORDERED**, as to Exxon Mobil's **Third FOIA Request of May 7, 2009**, Exxon Mobil file into the record, by **Friday, July 9, 2010**, a List identifying the specific leases for which information is missing from the subject MMS website, and MMS provide Exxon Mobil, by **Friday, July 30, 2010,** with documents relating to suspension of those leases, if they exist.

**IT IS FURTHER ORDERED** that Exxon Mobil's **Motion for Summary Judgment** be and is hereby **DENIED** in all other aspects.

New Orleans, Louisiana, this **25th** day of **June**, **2010**.

_____
A.J. McNAMARA
UNITED STATES DISTRICT JUDGE